Mr. A.L. Lockhart, Director Arkansas Department of Correction P.O. Box 8707 Pine Bluff, Arkansas 71611
Dear Mr. Lockhart:
This is in response to your request for an opinion on whether the Department of Correction can institute an employee drug testing policy, which would include mandatory pre-employment testing and a random drug testing program for all employees. You request my opinion so that a policy may be developed which would be fair to all involved and would withstand a legal challenge.
It is my opinion that the Department of Correction may constitutionally implement a pre-employment and random drug testing program for only certain types of its employees, and only if certain procedural safeguards are included in the program.
The Attorney General's Office has previously opined on the subject of drug testing of public employees. See Opinion No.90-186, a copy of which is enclosed. That opinion, in which I concur, discusses two recent United Supreme Court cases on drug testing of public employees,[1] and concludes that the question of whether civilian state employees of the Military Department of Arkansas may be subjected to drug testing will depend upon several factual issues. These include the nature and extent of a particular employee's duties, the procedural safeguards in place in a particular testing program, and the extent to which employees are already required to submit to privacy deprivations (such as medical examinations, physical fitness tests etc.). The opinion discusses another recent federal appellate case involving the testing of similar federal military employees.
We will not review the conclusions reached in Opinion No. 90-186
in detail herein, as it is attached for your review. It should be noted, however, that as in that opinion, there is also a relevant federal appellate case involving the drug testing of correction officers which will be of guidance in analyzing your question.
In Taylor v. O'Grady, 888 F.2d 1189 (7th Cir. 1989), a case decided with the benefit of the recent U.S. Supreme Court rulings on the issue, the Seventh Circuit Court of Appeals upheld, in part, a drug testing program at a county department of corrections. Under that program, each correctional officer and correctional supervisor was required to produce a urine specimen once each year, but they would have no advance notice of what specific day they would be required to produce it.
The court stated the current test as laid down by the U.S. Supreme Court, as follows:
 As a consequence of Skinner and Von Raab, the issue of governmental suspicionless urinalysis for drug screening essentially rests on a balancing test: the interests of the government balanced against the privacy interests of the employees. And the privacy interests of the employees are not simply composed of the desire to be free from mandatory urinalysis, but also concern the intrusiveness of the particular program in issue. Thus while urinalysis may be within the government's prerogative in a given circumstance, the manner in which the program is carried out may be so unnecessarily intrusive as to render it constitutionally intolerable.
888 F.2d at 1195.
The court went on to uphold the drug testing program as to many employees, but struck the program down as it applied to employees who have 1) no regular access to the inmate population; 2) no reasonable opportunity to smuggle drugs into the inmate population; and 3) no access to firearms.
The court, in applying the balancing test as to officers who come into regular contact with prisoners, noted that:
 Prisoners can be potentially violent and many of the guards are armed. A momentary lapse of alertness could lead to irreparable harm. In addition, the intrusion into the officer's privacy is designed to be minimal and is in line with [U.S. Supreme Court cases.]
888 F.2d at 1199.
The court also noted, however, that:
 As to the other, administrative personnel, the governmental interest is not sufficient to overcome their privacy interests. The only legitimate interest advanced by the Department for testing these employees is the general integrity of the work force. This is not enough.
888 F.2d at 1199.
It is my opinion, after a review of all of the relevant case law on point, that the Department, if it wishes to implement a drug testing policy for its employees, must analyze several factors. It must analyze the job description of the employees involved. Do they carry firearms? If so, it is my opinion that they may be subjected to random testing. See e.g. Plane v. U.S.,750 F. Supp. 1358 (W.D. Mich. 1990) citing Von Raab; and Hartman v.Bush, 919 F.2d 170 (D.C. Cir. 1990). Do they come into contact with the general prison population? Is there an actual threat of significant harm if the employee's functioning is impaired by drugs? These factors all go to the weight of the governmental interest in the testing.
Also important is the way in which the program is carried out. The procedural safeguards in place to assure accurate results and the actual procedures used in collecting the samples will be relevant in determining whether the program is constitutional. Many cases on point discuss the issue of direct observation of the employee when the sample is collected. It is my opinion that the cases agree that routine observation of every employee who gives a sample may be struck down. The courts require an individualized suspicion that the particular employee will attempt to adulterate his or her sample before the very intrusive element of direct observation will be allowed. See e.g.National Treasury Employees Union v. Yeutter, 918 F.2d 968
(D.C. Cir. 1990).
It is thus my opinion that the Department of Correction may engage in the random testing of at least some of its employees. These employees would be those who carry firearms, such as guards; it may include those who come into constant contact with prisoners, and whose lapse of concentration due to drug impairment could result in serious harm. The Department, however, may not be able to engage in wholesale testing of administrative personnel, who perform clerical or other duties and whose lack of mental acuity may not have such potentially disastrous results. The Department will have to consider these factors in light of each of the different types of employees when fashioning its policy.
One final issue should be noted. You have stated that the Department would like to develop a policy for the drug testing of employees. It is my opinion that any policy of this nature should be formally enacted by the Arkansas Board of Correction. This is true especially if the policy may result in the suspension or discharge of employees. The Arkansas Code provides at A.C.A. §12-27-107 that:
 Subject to the rules, regulations, policies, and procedures prescribed by the Board of Correction,
the director shall:
* * *
 (4) Institute programs for the training and development of personnel within the department and have authority to suspend, discharge, or otherwise discipline personnel in accordance with policies prescribed by the board. [Emphasis added.]
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Sincerely,
WINSTON BRYANT Attorney General
WB:arb
[1] Skinner v. Railway Labor Executives' Association,489 U.S. 602 (1989), and Treaasury Employees v. Von Raab,489 U.S. 656 (1989).